Good morning, Your Honors. May it please the Court, I am Jim Cox, and I represent SunTrust Bank in this appeal. I will reserve five minutes of my time for rebuttal. Unless you have something else that you want me to address this morning, I'm going to focus on why we believe the District Court erred when it awarded anything more than nominal damages to the plaintiff on their claim for breach of contract relating to the confidentiality agreement. The reason that award was error, we believe, is because the plaintiff did not prove, did not suffer any actual injury or harm from that breach of contract that the Court found that SunTrust committed. We believe that California law is clear that in the breach of contract context, of course the plaintiff to recover must prove that there has been a breach. But we believe California law is also clear that in order to recover more than just nominal damages for a breach of contract that is proven, the plaintiff must also prove that the breach caused actual injury or harm. And if the breach is proven but there is no proof of additional, additional proof of injury or damage, then we believe California law says that the recovery must be limited to nominal damages. So under this theory, then, anybody who puts a confidentiality clause in their contract in California, it doesn't mean anything unless there is specific damage flowing from using it. Your Honor, I know of no California authority that stands for the proposition that breach of a confidentiality agreement is to be handled any different than any other breach of contract. If the plaintiff in the context that you described is not injured by the breach that is found in the confidentiality agreement, then only nominal damages are awarded. If the contract is breached and there is damage, then certainly then appropriate damages are to be awarded. Another way to state this issue is if there is a breach of contract, no obvious direct damages, but the defendant has been unjustly enriched, even though the plaintiff hasn't been directly damaged, can the unjust enrichment be a form of damages, if you will, or a substitute for damages or an available remedy? And I don't read any of the California cases that have been cited to us completely address that question in a definitive way. And if I'm right about that, is this the kind of question that would appropriately be certified to the California Supreme Court? Your Honor, I think that the Avino case, the Erickson's case, talk about in the context of no injury being suffered and nominal damages only being awarded. I believe that the Ajaxo case speaks of the situation where disgorgement or restitution or some other remedy is ordered in the absence of damages. And in that context, it would be unjust enrichment. It would be inappropriate. So I think that those cases do give us guidance on this issue. Your Honor, the district court here, I believe, well, it is important, Your Honor, I think, with regard to this case to remember that the confidentiality agreement that was breached, the breach was not that the confidentiality of the information that was received was compromised. It was so. You're moving away from a point. I'm sorry, Your Honor. I would prefer you to finish your point. There's three cases that were relied on, Ajaxo, SNAP, and YJD. If those cases are applicable, then there's nothing wrong with what the district court did in making the disgorge profits illegally gained. So I think, how do you distinguish those cases? Why shouldn't they stand for the position, at least helpful to the position of your opposition, of getting disgorgement so that there's no ill-gotten profits by the bank? Your Honor, I believe they do not apply because all of those cases were cases in which there was specific harm or injury. Now, that isn't true. That isn't true of SNAP. They just said that there was no way of calculating the amount of damage. That means zero damages. So SNAP is pretty close to what we have here. Your Honor, SNAP, number one, was involved in a breach of fiduciary duty, and that makes it different. But I believe that SNAP is a case where there was a finding in that opinion of specific injury or harm. Not exactly. What they referred to is incalculable harm, that is, letting the CIA information out. There's no way you can indicate the damage to the government and its CIA representatives. That seems to me as no damage because you can't put a figure on it. Isn't that closer to the case we have here? Well, it may be closer, Your Honor, but I still think it is distinguishable because I believe there was a finding in SNAP that the government was damaged. Yes. They said there was irreparable harm. Yes, ma'am. And I think that's the distinguishing factor because there was no finding of harm. But it's a harm that is intangible in the way that a breach of a confidentiality agreement is intangible because the harm there was damage to the relationship with other foreign intelligence partners and with sources and spies, I guess one would say. But that's not money damages. It's kind of an intangible. Your Honor, the difference between that situation and the case we are here on this morning was there was no harm or injury of any kind to the plaintiff. Well, there's no money damage, but every time that you have an agreement that someone else doesn't live up to, particularly where it's a confidentiality agreement, there's some kind of intangible harm from that that may not translate into direct dollars, but it seems to me that there's still a type of harm from the very fact of the breach. Well, Your Honor, in this case, the breach, again, was the finding that SunTrust had used the information for a purpose not authorized. There was no dissemination of information. There was no showing that any trade secrets, any proprietary information was taken and used against the plaintiff. Yes, that's like SNP. They didn't know how far it was eventually going to go. Your Honor, respectfully, I think there is a very meaningful difference, a significant difference between cases where there is a finding of harm or injury, but the amount of such is difficult to quantify, which is what SNP was, and our case where there was no finding of harm or injury at all. For example, the Erickson cases and Avena cases are cases which under California law, I believe, recognize that there are going to be situations where a contract is breached, but the breach causes no actual damage or harm. And those cases stand for the proposition that when that is the case, then anything more than nominal damages is inappropriate. So not every ñ I believe those cases obviously have to stand for the proposition that under California law, there can be breaches of contract that do not, in fact, result in injury or harm. And we respectfully submit that this was ñ is one of the cases that falls in those categories, in that category. The ñ if every breach of contract case justified the award of damages above nominal damages, even in the absence of any harm or injury from the breach, then there would be no place, I would submit to Your Honors, for Aveno and Erickson. Those cases only make sense by their reading and by the context in which they are ñ those decisions exist, but for the fact that ñ for the proposition that there have to be some cases that don't, in fact, cause injury or damage. And, again, I think this is one of those cases. Your adversary is going to say that you should have paid the full amount and it shouldn't have been decreased by $2.9 million on the latches because latches was never pled in the case. Yes. Do you want to respond to that? Well, Your Honor, as we said in our brief, we believe that the district court, when it was asked to award an equitable remedy of discouragement, necessarily was permitted to recognize and didn't have to ignore equitable issues that were in the nature of defenses. The district court should not have been handcuffed in being required to give an equitable remedy and ignore other equitable principles that necessarily arose in its analysis. When the district court decided to do discouragement, was there any amendment to the pleadings or the pretrial order? Your Honor, the ñ I believe the answer to your question is no. This was always a breach of contract claim with the measure of damages being the traditional measure under breach of contract law. Okay. And so when the district judge moved over into taking the profits and later in the ñ in forming the latches, there was no amendment to the pretrial order. There was no amendment to the pleadings. This was just strictly responding by the district judge at the end of the case as to what the amount of damages are going to be. Your Honor, I believe in the context of the pretrial order, the plaintiff made ñ did make a ñ make it clear to the district court that they were going to ask for discouragement. And we objected on the basis that there was no basis for discouragement in the case. Wait a minute. When did this happen? In the pretrial conference, Your Honor. Okay. And was latches mentioned there? No, sir. It was not. So all that ñ was there an actual amendment made to the pretrial order? The pretrial order, Your Honor, recited that the plaintiff, as part of its relief, intended to ask for disgorgement of the interest that ñ So the pretrial order did cover that? Yes, sir, it did. Okay. Thanks. Thank you, Your Honor. May it please the Court, Carmen Zarlinga of Howery, on behalf of the Appellees Foster Poultry Farms and Fresno Farming, with me today is my co-counsel, Julia Follansbee. I am going to try to address the same questions that came up from right to left in the argument by my opposing counsel, the first being the efficacy of a confidentiality agreement, because if this Court follows the road that SunTrust wants to go down, confidentiality agreements aren't going to have much value. Why is that? Because confidentiality agreements, it is very difficult to prove actual damages that flow from a disclosure of sensitive private confidential information. In the case of the confidentiality agreement, California law, this is a diversity case, is binding. The Ajaxo case is very close on the facts to this case because that case involved not necessarily trade secrets. There was a trade secret claim and there was an NDA, nondisclosure agreement claim, in which California court said that sensitive private information should be held confidential. If it gets disclosed, it's very difficult to find what the damages are directly, so we are going to allow a disgorgement remedy because the defendant shouldn't be disclosing that. That's the plaintiff's property. That plaintiff has a right in that property, in that information, and if it's exploited unjustly, then the exploiter has to make due for what profits it earns. It's no different. It's not a separate case. But wasn't the – that's a – the difference there is that there was a direct relationship between the use of the information and the damage, and so that's – that's a big difference in that case, isn't it? Well, here's the thing, because Suntra says over and over again there was no harm in this case. That is not what the judge's ruling says. In the conclusion of law, paragraph 108, the Court found that plaintiff – and I quote, this is in the record of ER-437 – "...plaintiff's losses are difficult to assess and quantify." Okay? So that can't be reconciled with the argument that you've heard again and again and again and throughout the briefs that there was a finding of no harm. There was no such finding. But you didn't answer my question. All right. Let me try to do that. I think your question was, what was the closeness between the disclosure and the injury? So – Well, at JAXA, there was – you know, isn't that the case where they were looking at basically the loss of being able to license? That is – that is exactly – That's a very typical intellectual property case where you then go to loss profits or disgorgement. I agree with that. But here is – here is the analogous situation here. The analogous situation here – and it gets a little lost in a very long ruling – is our information, which we agreed with the bank would be held and used only for one single purpose and would not be used directly, indirectly, was used to foster our competitor's business. Our competitor, Zaki Farms, is in the poultry business. And in the findings of fact, it says, and I quote, Ms. Lyons, who is the banking officer, whose background is making loans within the agricultural industry in California, knew that Zaki Farms was still in direct competition with the plaintiffs at the time. So our private information, which the bank agreed not to use for any purpose other than for our purposes, was used to help our competitor. Now, if I came here and said, I'm going to prove that because of that Zaki Farms sold extra turkeys, SunTrust would be saying, there's no way you could prove that. It's impossible to prove. There's too many links in the chain, so don't hold us responsible for that either. The fact of the matter is that banks are in a position to receive a lot of information in commercial deals like this and in consumer deals that they agree to hold confidential, and that's what they should do with it. And when they exploit that for improper purposes, then they should have to account for how they use that information. And that, essentially, we believe is what Ajaxo says and what SNEP says. In SNEP, there was no provable monetary damage. In the Supreme Court of the United States, the arguments were, well, you can't prove that some CIA agent got killed. So the defendant says, we shouldn't have to account for that. The Supreme Court of the United States says, no, that's not quite right. You agree in writing not to use this information. You then went ahead and did it. And you should have to disgorge the profits that you earn from that. It is not a far cry from this case at all, specifically negotiated contract provision. As Your Honor, Judge Wallace raised, we are going to ask that the latches, I'll call it restriction on our ability to get all of the damages flowing from the misuse of the information, be revisited and reversed. And that we receive on the basis of the law. Kagan. I want to go back to your statement on SNEP. Well, let Judge Wallace proceed, and then I want to go back to SNEP. All right. Go ahead. On the basis of what? That they didn't plead it? No. Well, on the basis that, okay, I'm a trial lawyer, and I went to trial as the plaintiff. No one pled latches. There was nothing in the pretrial order about latches. I did not put on what I would call an anti-latches case. Latches came up for the first time in this case in the judgment, in the final ruling of the court, after the trial was over. Now, we don't think that's fair. We think that's prejudicial. There's no basis for the court to simply say, well, I'm just going to cut this off because I feel that the plaintiff delayed in bringing the case. We don't even need to go to a retrial or have anything. There's plenty of evidence in the record that Foster Farms went to SunTrust Bank repeatedly before this case was filed and tried to find out what were the facts. Let me ask you. And we were lied to and misled. You got your equitable issue in at the pretrial conference, and it was in the pretrial order? Well, if you want to call it equitable issue, I think, if I remember correctly, the first question was, did we have disgorgement as a remedy in the pretrial order? In black and white, paragraph 19 of the pretrial order, part of the record, Foster Farms also seeks to disgorge those amounts by which SunTrust was unjustly enriched through the monetization. And is in there Was that in your pleadings, too? Absolutely, Your Honor. So it's in the initial pleadings plus in the pretrial order? Fair game. Everybody knew that we talked about a jacksaw in the opening statement. The opening statement was not the typical jury opening statement. Okay. And then at no time, if I understand you correctly, was there anything in the pretrial order or any of the prior pleadings about latches? Barren of latches, and I don't think SunTrust claims otherwise. So what you're saying is that the district court didn't have power to use latches because it has never shown up in the final pretrial order? It's a pure error of law because it is supposed to be in the pretrial order, which governs the proceedings. And maybe that order could have been amended. As Your Honor suggested, it was not. It seemed to me that the judge was, in a sense, making a settlement for the parties, sort of saying he split the baby. And, you know, maybe That's how it looked to me, just reading between the lines of the district court's decision. Maybe the court thought that was a fair thing to do, but legally it wasn't the right thing to do. And so we believe that we're entitled to the full amount of the disgorgement from the time of the breach right up until the end of the deal. So we ask that that relief be granted. It can be done very easily. And I just wanted to make a couple of points about the fact that we didn't delay at all. Foster Farms took a responsible course of trying to find out what had happened. And in the findings of fact, it says right in the findings of fact, SunTrust Bank provided false information about this deal, about what they did before the lawsuit was filed. That's at Excerpts of Record 380, SunTrust admitted at trial that a written assertion that it provided to Foster Farms was false, that the information, the confidential information, part of it that they received was obtained through false pretenses. Again, that's at ER 369, again, right in the court's ruling. Is that excerpt page 380 or finding 380? It's page 380 and page 381. Of the excerpt? Yes. And the paragraph is 165, your Honor, of the findings of fact. So we were misled and couldn't figure out what had happened. And after being run around the Maypole for about a year, we finally filed a lawsuit. And that's where we found that our confidential information had been misused. And it had been misused in a very serious way. And I would refer the court to the credit package, which is what SunTrust Bank put together. I would say that's the most key document in our case, and certainly on this appeal, where our confidential information is splattered all over it. And the SunTrust representative who testified at the trial said, shouldn't be in there. He testified, that information should not be in there. Worse than that, the banking officer said, if we do this, Foster Farms probably isn't going to like it, and they're probably going to fire us. So they knew exactly what they were doing. It was duplicitous behavior. And so I don't think it's unfair at all for us to get the full amount of- Let me go back to the- Of disgorgement. The premise, you know, this disgorgement, because the case is – there's really no case that stands for your proposition precisely. And counsel has cited, you know, Aviso and Erickson. I want to go back to Schnepp, where they really talked about the irreparable harm, and then they had documentation in the record, I think from Admiral Turner of the CIA, about actually losing agents and very tangible things happening as a result of the breach of trust or breach of confidentiality. Is there anything in this record that you can point us to that's akin to that – to any documentation of damage? Well, I suppose what I can point you to is the Court's finding, which I already read, that there were losses. They were just difficult to assess and quantify. What were the losses? Well, the losses were our confidential information is used to help out our competitor. Well, we had an agreement that that wouldn't happen. Now, they – our competitor – and so this goes directly to your question – went to another bank that didn't have the private secret information. That's the first thing they did. They went to Credit Suisse, and Credit Suisse said, we can't do this for you. We can't do this deal. So the – we submit that the sine qua non of doing this deal was understanding the structure of the deal and all the – what SunTrust calls in the credit package the big picture mechanics, the profitability of foster farms, the future profitability of foster farms, and how solid this – their ability to pay the notes was. So that was how they were able to do the deal, by accessing our information and helping ultimately our competitor, who couldn't get that deal from another legitimate bank. So that's as close as I think I can come to answering your question. I read the Ajaxo case again for about the 15th time last night, and I think it's pretty close. Yes, there are differences, but it's pretty close to the facts of this case, and certainly SNAP – I mean, the principles of SNAP, the legal principles, apply fully here. I see that I'm just about running out of time, and I do have some issues on the cross appeal. The basis for our cross appeal is that SunTrust breached the credit agreement, admittedly, in three different ways, and they want not to be held responsible for that. We had specifically negotiated provisions in the credit agreement. The bank tried to take them out. We insisted that they be put in, and then they went ahead and breached them. They asked our permission to do what they wanted to do with the second deal. We wouldn't give it. When that didn't work, they went to a lawyer, and they got incorrect legal advice, which they then didn't even follow, and the end result is tremendous uncertainty was created with respect to this transaction. SunTrust says, well, no harm, no foul, but it would be just like ordering a car with specific options that you tell the dealer you must have. The dealer comes back and says, there's defects in those options. You could be hurt, but don't call us back until you crash and you're dead. There's no damage. There's no injury. That's SunTrust's position. It goes too far. It goes too far, and in addition to having all the money that SunTrust earned on the monetization by using our confidential information, we believe we're entitled to the amounts that were paid for a letter of credit after it was breached up until the time it ended. And I'll reserve what time I have left for rebuttal. Thank you, Your Honors. Thank you. You'll have rebuttal only if there's discussion of the cross-appeal. Thank you. Your Honor, it is absolutely untrue that there was any evidence that anything that SunTrust did relative to the confidentiality agreement caused any competitive harm or injury to the plaintiff. Finding 85 on page 425 of the record, the district court specifically stated, there is no evidence that Zaki Farms, well, plaintiff produced no evidence that any of plaintiff's information was disclosed to or used by Zaki Farms, any of its owners, or any third person or entity. There's no evidence that Zaki Farms used the information in SunTrust's possession, and there is no evidence that any action or inaction by SunTrust caused any economic detriment or harm to the plaintiff by virtue of SunTrust's dealings with Zaki Farms. So it is absolute, absolute misrepresentation to say that there was any effect on Foster Farms of the use by SunTrust of that information. There was — it was not even contended that the information was disclosed to anyone. Well, I think what they said, they quoted — I didn't have it in front of me. They quoted a finding by the district judge that damages were hard to quantify. Well, the court — Is that what the — was that an accurate reading of that? The statement, I think, specifically is the district court said the losses are difficult to quantify or assess. That is not, with all due respect to Mr. Zuliga, any finding of any harm or damage, Your Honor. Could you just go back to what you were just before this reading from, where you said that there was a statement in the district court saying that there was no link or damage. What were you reading from on that? I'm reading from finding — conclusion — it's on page 425. It is paragraph 85 on paragraph 4 — on page 425 of the record, Your Honor. The monetization that was done by SunTrust was specifically found by the district court to have been authorized and agreed to by the plaintiff well in advance of when it was done. That was part of the original transaction where the promissory notes and the letter of credit were given to Zaki Farms as part of the purchase price. The district court specifically found that the plaintiff had agreed to the transaction, had even agreed to give financial information, make it available to whoever the monetizing bank turned out to be. But the district court specifically found there was nothing wrong with the structure of the transaction or SunTrust participation in it. And to imply the contrary is contrary to the specific findings of the district court. There was no use of this information in any way that damaged, harmed, or adversely affected the plaintiff. The — and I see my time is up. Yes, ma'am. Well, I have a question, because this really goes to the applicability, I think, of EJAC. So I'm looking at the entirety of finding or conclusion number 108 at 436 and 437. And the court did say, it remains that FPF was not provided the benefit of its bargain to not have its financial information used except for the authorized purposes. As a result of this breach, SunTrust was able to utilize more of plaintiff's financial information than was authorized to make two-term loans to the trust, from which SunTrust earned interest and fees for its sole benefit. And so I think this is really a way of describing what the harm is. At least it looks like that to me. I mean, the court is saying you can't put Foster Farms into its bargain-for position because the information is already out there. You can't unring the bell. Your Honor, in response to that, that, I would submit, is not — that is a description of the breach of the contract. It is not a finding of harm or injury. And Foster Farms cannot point to or describe any manner in which their interests were adversely affected. All they can show is that SunTrust, according to the district court — Profited from its wrong. No, ma'am. That's what the court said. Well, whether SunTrust realized revenue from what it did is not the test, respectfully, under California law. It's whether what the — whether the breach of contract caused any harm or damage to the plaintiff. And it did not. All that — what Your Honor pointed to, I would submit, is the finding that the contract was breached. Any time, even in Aveno and Erickson, there was a failure of one party to fulfill its contractual promise. That's the nature of the breach. But those cases are clear that more than that is required if more than nominal damage is to be awarded. The plaintiff — if there had been damage to the plaintiff and the plaintiff had proved it and the district court awarded damages to compensate for that injury or damage, that would be a different case. But that, respectfully, is not the case that we have here. Thank you, counsel. There will be no rebuttal because that was not about the cross-appeal. So the case just argued is submitted. And we appreciate very much helpful arguments from both counsel.
judges: Wallace, Graber, McKeown